The STATE of Ohio, Appellee,

v.

BROWN, Appellant.

[Cite as *State v. Brown* (1993), 88 Ohio App.3d 509.]

Court of Appeals of Ohio,
Lake County.

No. 92–L–142.

Decided July 6, 1993.

*Edward C. Powers,* Painesville City Prosecutor, for appellee.

*David E. Farren,* for appellant.

JOSEPH E. MAHONEY, Judge.

This is an accelerated calendar case.

On May 23, 1992, Steven Thompson borrowed a car belonging to his brother, Dean Thompson. He parked the vehicle in Steve Brown's driveway, which was located across the street from his own house. Upon returning to the vehicle later in the day, he found Steve Brown sitting on the roof of the car. It is disputed

what happened next. Either Thompson pushed Steve Brown off the car or he asked him to move so that he could use the vehicle.

According to Thompson, after he asked Steve Brown to move, Steve Brown's brother, appellant Jeffery D. Brown, ran over to his own car, took out the jack, and smashed the windshield of the Thompson automobile. At that time, Thompson got in the car and left the premises.

Appellant, Jeffery Brown, claims that when Steven Thompson came over, Thompson pushed Steve Brown off the car and was "acting all crazy." He further claims that he went to the trunk of his car and took out the jack so that he could defend himself and his family from Steven Thompson, who was threatening and pushing everybody present. Appellant carried the jack to the passenger side of the Thompson vehicle, at which time Steven Thompson grabbed the jack and the two had a tug-of-war with it. Appellant claims that Thompson suddenly let go of the jack, causing the jack to hit the windshield.

Appellant claims that Steven Thompson jumped out of the vehicle and ran across the street. At that time, appellant left the scene in his own automobile before the police arrived.

At first, appellant's father offered to pay for the windshield. Later, appellant agreed to pay for the windshield because, he said, "I don't want no more trouble." However, appellant claims he was continually harassed by Steven Thompson, causing him to change his mind about paying for the repair.

On June 5, 1992, Dean Thompson filed a complaint for criminal damaging against appellant in the Painesville Municipal Court. The complaint alleged that on or about May 23, 1992, appellant knowingly caused or created a substantial risk of physical harm to the property of Dean Thompson, without his consent, in violation of R.C. 2909.06(A)(1). On August 17, 1992, the matter proceeded to a bench trial in which appellant appeared without counsel.

Appellant was found guilty of criminal damaging and sentenced to ninety days in the Lake County Jail, with eighty days suspended, restitution costs, and a $100 fine.

Appellant timely filed a notice of appeal. Appellant's sentence has been stayed pending appeal.

In the first assignment of error, appellant asserts that the trial court erred when it limited his own testimony at the request of the prosecutor. Appellant contends that the court's limitation of his testimony violated his right to a fair trial and to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

In the present case, appellant presented his case at trial *pro se*. Upon taking the stand, he proceeded to relate to the court the events that occurred on May 23, 1992. Appellant explained how Steven Thompson pushed Steve Brown off the car and why he got the jack from the trunk of his car. Appellant stated:

"I got in the trunk of my car and I got my jack out to defend myself and defend my family. And [Steven Thompson] started threatening my father, threatening everybody, he was pushing everybody around, he was acting all crazy acting [*sic*]."

At that point, the prosecutor objected based on relevancy. The trial judge sustained the objection, stating:

"Mr. Powers is right. What we're here to talk about today is [*sic*] the charges that have been charged. All that matters is that you damaged his vehicle. Now, if you have some testimony as to regards to [*sic*] that or defense then you can talk about that but the Court is limited to what's relevant to this case only and not a lot of extraneous matters."

After the objection was sustained by the trial court, appellant proceeded to explain what happened next. He testified:

"MR. BROWN: Okay. Well, then I walked—I walked down to the passenger side of his car and I had the jack in my hand and he reached out and grabbed the jack from me and was pulling it inside the car and I was—we was like having a tug of war with it, and he let go of it and it hit the window. And, then he jumped out of the car and came—as far as I know, he just left and went across the street or something, and everybody was yelling, you know, to call the police because he was acting—he was scaring everyone. And, so I got in my car and left. And, I was not drinking."

Appellant was facing charges of criminal damaging pursuant to R.C. 2909.-06(A)(1), which provides:

"(A) No person shall cause, or create a substantial risk of physical harm to any property of another without his consent;

"(1) Knowingly, by any means[.]"

In the case *sub judice*, the trier of fact was faced with two opposing stories of what occurred on May 23, 1992. Steven Thompson testified that appellant walked up to the windshield and smashed it with the jack. Appellant testified that he was struggling for possession of the jack with Thompson when Thompson suddenly let go, causing the jack to accidentally hit the windshield.

Based upon the credibility of the witnesses, the trial court had to determine whether appellant knowingly caused a substantial risk of physical harm to the Thompson vehicle. Appellant argues that he was wrongfully

precluded from explaining the necessity of having the jack in his hand. It is apparent that appellant's reason for having a jack in his hand is immaterial to the issue of whether he violated R.C. 2909.06(A)(1). Appellant seems to be claiming that he was acting in self-defense in retrieving the jack from the trunk of his car; however, self-defense is inapplicable to a charge of criminal damaging.

Moreover, even though the trial court sustained the prosecutor's objection, appellant had already explained that the purpose of getting the jack was to defend himself and his family. He was also able to explain that the smashed windshield was caused by an accidental occurrence. Thus, the trial judge, acting as trier of fact in this case, heard the evidence that appellant wanted him to hear.

Civ.R. 61 provides that an error is harmless unless a substantial right of a party is affected. In the present case, it is clear that appellant's substantial rights were not infringed.

Appellant's first assignment of error is without merit.

■ In the second assignment of error, appellant maintains that the trial court erred in sentencing him to the maximum jail term for his conviction.

■ Appellant correctly points out that the trial court has broad discretion in sentencing. In *State v. Cyrus* (1992), 63 Ohio St.3d 164, 586 N.E.2d 94, the Ohio Supreme Court stated, in part:

"This court has held that: 'A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12.' *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus; accord *State v. O'Dell* (1989), 45 Ohio St.3d 140, 147, 543 N.E.2d 1220, 1227. Nothing in the statute or the decisions of this court imposes any duty on the trial court to set forth its reasoning. The burden is on the defendant to come forward with evidence to rebut the presumption that the trial court considered the sentencing criteria." *Id.*, 63 Ohio St.3d at 166, 586 N.E.2d at 95–96.

Additionally, this court recently stated:

" * * * [I]t is well established that where the sentence imposed is within the statutory limits, the appellate court cannot hold that the trial court abused its discretion by imposing too harsh a sentence. *State v. Coyle* (1984), 14 Ohio App.3d 185 [14 OBR 203, 470 N.E.2d 457]." *State v. Sauers* (Dec. 11, 1992), Portage App. No. 92-P-0015, unreported, 1992 WL 366966.

In the case at bar, appellant was given the maximum sentence within the sentencing guidelines—ninety days for a second degree misdemeanor. The court then suspended eighty days and placed appellant on four months' probation. Appellant faces ten days in jail. Clearly, this is not an overly harsh sentence.

Appellant has failed to meet his burden of rebutting the presumption that the trial court considered the sentencing criteria. The trial court did not abuse its discretion in sentencing appellant.

Appellant's second assignment of error is without merit.

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., concurs.

CHRISTLEY, J., dissents.

CHRISTLEY, Judge, dissenting.

I respectfully dissent from the second assignment of error regarding the sentence. I do so realizing that there is no authority other than common sense and fairness which I can cite to support my position. The net result of the sentence was that appellant would have to serve ten days in jail, plus a $100 fine plus restitution and costs.

Appellant was not convicted of assault, he was convicted of criminal damaging. He damaged a car and not a person, and, in fact, subsequently offered to pay for the damages. The record shows appellant had no previous record but traffic offenses. There was an outstanding warrant from a number of years ago, but the prosecutor had no information on it. It did not involve a crime of violence.

Under those circumstances, it is difficult to justify the imposition of actual jail time rather than probation. I note too that this matter was handled by an acting judge. While his or her motives and qualifications are not in question, it points out the need for reform in the matter of appointing acting municipal judges. I, therefore, respectfully dissent.