[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Wilson,* Slip Opinion No. 2024-Ohio-776.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-776

THE STATE OF OHIO, APPELLEE, *v.* WILSON, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Wilson,* Slip Opinion No. 2024-Ohio-776.]

*Criminal law—R.C. 2901.05—Affirmative defenses—Self-defense—Ineffective assistance of counsel—Appellant produced evidence that tended to support claim that he had acted in self-defense, and he was therefore entitled to a self-defense jury instruction—Trial counsel was prejudicially ineffective by failing to request a self-defense jury instruction—Court of appeals' judgment reversed and cause remanded to trial court.*

(No. 2022-1482—Submitted September 26, 2023—Decided March 7, 2024.)

APPEAL from the Court of Appeals for Clark County,
No. 2021-CA-68, 2022-Ohio-3763.

_____

**STEWART, J., announcing the judgment of the court.**

{¶ 1} Appellant, Tyler Wilson, engaged in a heated verbal altercation with Billy Reffett at a gas station. According to Wilson's testimony at his trial on charges of attempted murder and felonious assault, Wilson shot a gun out his car

window in order to "scare" Reffett and make him "back off." Wilson claimed that he shot the gun in self-defense, but the trial court determined that because Wilson did not intend to harm or kill Reffett, he was not entitled to a self-defense jury instruction. Wilson's trial counsel conceded that a self-defense jury instruction was not warranted. The Second District Court of Appeals concluded that self-defense does not apply to the facts of this case and found that Wilson's counsel did not provide ineffective assistance by failing to request a self-defense jury instruction. But because R.C. 2901.05(B)(1) and our case law do not require that a person intend to harm or kill another person to be entitled to a self-defense jury instruction in a criminal trial, we reverse the judgment of the Second District, vacate Wilson's conviction, and remand this matter to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The video footage captured by the surveillance cameras at the Shell gas station in Springfield where most of the events took place and testimony elicited from several witnesses at trial are relatively consistent.[1] On the morning of June 8, 2021, Wilson was parked at a gas pump, preparing to leave after he had purchased gas and other items from inside the station. Wilson's friend, the owner of the car, was sitting in the passenger seat. Reffett, while on his way to work, stopped at the gas station. He too had a passenger in his truck. When Reffett was pulling up to the pump, he drove his truck in between Wilson's car and another vehicle. Wilson began to yell at Reffett because he believed Reffett had driven too close and nearly clipped the car. Reffett then backed up his truck until his driver-side window was next to Wilson's driver-side window. Reffett's truck was so close to Wilson's car that Wilson believed that he could not open his car door. Wilson also claimed that

---

1. In addition to Wilson's and Reffett's testimony at trial, the gas-station attendant and his daughter testified, as well as three law-enforcement officers and a detective. Neither Wilson's passenger nor Reffett's passenger testified at trial.

Reffett was only a few feet away, was hanging out of the truck window, and was "spitting in [Wilson's] face." The two men engaged in a heated verbal altercation. Because Reffett was in a truck, he was situated a few feet higher than Wilson, who was still in his car. Wilson testified that during the altercation, Reffett said, "[W]hat you gonna do? I'll smoke you out here," and pointed a gun at Wilson. Reffett denied pointing a gun at Wilson or even having a gun. Further, the gas station's surveillance cameras did not capture the angle between the vehicles to show whether Reffett had pointed a gun at Wilson.

{¶ 3} Wilson testified that he had known that there was a gun in the car and that he quickly grabbed it and "aimed out the window and fired up" near Reffett's vehicle. After Wilson shot the gun, Reffett drove his truck forward and turned around in the parking lot. When Reffett stopped again, his passenger got out of the truck. Wilson claimed that he was fearful that Reffett's passenger was coming to harm him. Wilson drove away from the gas station, and Reffett chased him along Interstate 70 with both vehicles reaching speeds of at least 80 or 90 miles per hour. Reffett called 9-1-1 during the chase, but he eventually stopped chasing Wilson, went back to the gas station to pick up his passenger, and went to work. He did not meet with police until several hours later after he got off work.

{¶ 4} Wilson's car ran out of gas on the highway, and his passenger tried to push the car to the side of the road. During this process, the passenger fell and the car ran over her shoulder. When law-enforcement officers arrived to assist with the disabled vehicle, they ran Wilson's name and discovered he had unrelated warrants and took him into custody, while his passenger was taken to the hospital for her injuries. Wilson was later charged with attempted murder and felonious assault for his part in the altercation with Reffett at the gas station.

{¶ 5} At trial, Wilson testified in his own defense. On direct examination, Wilson's counsel asked, "Did you intend to strike [Reffett]?" Wilson answered, "No. I intended to scare him and back him off because that man had a gun to me,

either way he had a gun to me, so instinct, I grabbed [the gun] as fast as I could to protect me and [the passenger]." Later in his direct examination, Wilson reiterated that his intent was not to harm or kill Reffett:

Q. Did you intend to shoot [Reffett] at the time?

A. No.

Q. Did you intend to murder him?

A. All I wanted to do was make noise to get him out of my face. That man had a gun to me, and I don't even know how. I got one shot out of the vehicle, and it did its job for real. He got away from me, and the car wouldn't start or I would have had a little more time to get away.

{¶ 6} On cross-examination, Wilson repeatedly denied that he had attempted to hit or harm Reffett:

Q. * * * You admit you aimed [the gun] at him?

A. No.

* * *

Q. Did you fire your gun at him?

A. I fired her gun in the air.

* * *

Q. I'll show you State's Exhibit #7. That's one where we seen Mr. Reffett there with that circular hole or dent right by his head. Do you see that?

A. Yes.

Q. Now, you're saying that you shot at him but—

A. I didn't shoot at—

4

Q. —you didn't cause that dent right by that—

A. I shot out of my window to make noise.

**{¶ 7}** Wilson never testified any differently or recanted his statement that he had shot out of his window to scare Reffett.

**{¶ 8}** While Wilson initially presented a theory of self-defense, his counsel abandoned that theory at the suggestion of the trial court. Defense counsel conceded that a self-defense jury instruction was not warranted, because Wilson admitted in his testimony that he did not intend to harm Reffett. The jury found Wilson guilty of felonious assault with two firearm specifications but not guilty of attempted murder.

**{¶ 9}** On appeal to the Second District, Wilson argued that his counsel provided ineffective assistance by failing to request a self-defense jury instruction. A divided court of appeals rejected Wilson's argument. The majority concluded that a self-defense jury instruction was not available to Wilson, because he did not concede that he intended to harm Reffett when he shot the gun. To the contrary, the majority found that Wilson had attempted to negate the claim that he committed the offense of felonious assault by testifying that he had not intended to harm Reffett. *See* 2022-Ohio-3763, ¶ 52, 56. The majority reasoned that "because self-defense presumes an intentional, willful use of force, when an individual testifies that they [sic] did not intend to cause harm, such testimony prevents the individual from claiming self-defense." (Cleaned up.) *Id.* at ¶ 65. The dissenting opinion countered that Wilson was entitled to a self-defense jury instruction because he testified that his purpose for firing the gun was to repel a perceived attack on him. *Id.* at ¶ 78 (Donovan, J., dissenting). The dissent noted that "[t]he majority's decision encourages an individual to only shoot to kill or maim when confronted by an armed assailant." *Id.*

**{¶ 10}** Wilson appealed the Second District's judgment to this court, raising one proposition of law for review: "Is the accused entitled to a self-defense instruction for firing a warning shot at an armed aggressor, or must they [sic] shoot to injure or kill in order to receive the instruction at trial?" We accepted jurisdiction. 169 Ohio St.3d 1430, 2023-Ohio-381, 202 N.E.3d 717. Wilson argues that the court of appeals' majority erred by imposing a heightened burden of production on him in concluding that in order to assert self-defense, he had to concede that he intended to kill or harm Reffett. Neither the self-defense statute nor this court's case law requires such a concession. Because Wilson, through his testimony that he fired a shot to scare or repel Reffett, produced evidence that tended to support the claim that he acted in self-defense, we conclude that he was entitled to a self-defense jury instruction and that his trial counsel was ineffective by not requesting that instruction.

## II. LAW AND ANALYSIS

### A. *We decline to dismiss this case as having been improvidently accepted*

**{¶ 11}** Before discussing the merits of this case, we first address the state's request to dismiss this case as having been improvidently accepted because the wording Wilson uses to present his case to us on appeal is different from the wording that he used on appeal to the Second District. We decline the state's request.

**{¶ 12}** Wilson's assignment of error in the court of appeals stated: "Trial counsel provided ineffective assistance of counsel by failing to ask that the jury be instructed on self-defense and erroneously conceding that self-defense does not apply to the facts and circumstances of Mr. Wilson's case." His proposition of law asserted in this court states: "Is the accused entitled to a self-defense instruction for firing a warning shot at an armed aggressor, or must they [sic] shoot to injure or kill in order to receive the instruction at trial?"

6

**{¶ 13}** While the assignment of error and the proposition of law are worded differently, Wilson has asked both the court of appeals and this court to address whether he was entitled to a self-defense jury instruction and whether his counsel was ineffective by not requesting that instruction. The slight difference in the wording of the assignment of error and the proposition of law is a distinction without a difference. The Second District's analysis focused on whether Wilson was entitled to a self-defense jury instruction and thus whether his counsel was ineffective by failing to request that instruction. This is the issue squarely before us, and there is no substantive difference between the arguments that Wilson raised in the court of appeals and the arguments that he submits to us in this appeal.

**{¶ 14}** The dissenting opinion claims that we should not consider the ineffective-counsel argument, because Wilson did not properly raise that claim in this court. *See* dissenting opinion, ¶ 41-42. It is ironic that the dissent finds our decision to be "too narrow," *id.* at ¶ 33, while also encouraging such a rigid reading of Wilson's proposition of law and memorandum in support of jurisdiction, in which Wilson did argue that his counsel was ineffective in not requesting a self-defense jury instruction by stating that "Mr. Wilson's trial attorney erroneously conceded that self-defense did not apply to the facts and circumstances of the case and failed to request the self-defense jury instruction" and that "without making any argument or providing any case law, trial counsel merely acquiesced to the position of the trial court and prosecution that self-defense does not apply to an intentional warning shot in the direction of an armed aggressor." There is no question that Wilson preserved his self-defense argument, and this court understood Wilson's argument to include his ineffective-assistance-of-counsel claim when we accepted his appeal (over the dissenting opinion author's vote to deny jurisdiction), *see* 169 Ohio St.3d 1430, 2023-Ohio-381, 202 N.E.3d 717. The dissent's rigid reading of Wilson's proposition of law therefore misses the mark, and based on this court's precedent, we should still proceed to the ineffective-assistance-of-counsel

question, *see Goudy v. Tuscarawas Cty. Pub. Defender*, 170 Ohio St.3d 173, 2022-Ohio-4121, 209 N.E.3d 681, ¶ 15, fn. 1 (because the crux of the propositions of law that appellant set forth in her merit brief remained largely the same as those over which the court accepted jurisdiction, the court proceeded to the merits of the case). We therefore decline to dismiss this case as having been improvidently accepted.

*B. Intent required for self-defense*

**1. There is no intent specified in the self-defense statute**

{¶ 15} The parties agree that at the time Wilson was charged, Ohio's self-defense statute, R.C. 2901.05(B)(1), read as follows:

A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶ 16} Based on this statute, if there was evidence presented at trial that tended to support the notion that Wilson had used force in self-defense, the burden should have shifted to the prosecution to prove beyond a reasonable doubt that Wilson had not used that force in self-defense. As discussed below, Wilson presented evidence to support the notion that he had used force in self-defense.

{¶ 17} The state does not point to any language in the statute specifying that a defendant must have acted with an intent to harm or kill another person in order to assert and be entitled to a self-defense jury instruction. The statute requires only

that the defendant use force against another person, and there is no further specification of the mental state required to assert self-defense. As there is no statutory support for the state's claim that self-defense requires an intent to kill or maim, we turn next to case law.

**2. Self-defense case law requires only an intent to repel or escape force**

{¶ 18} While R.C. 2901.05(B)(1) does not require a particular mental state in self-defense claims, case law specifies the intent necessary to assert self-defense. For nearly 100 years, this court has held that self-defense "presumes intentional, willful use of force *to repel force or escape force*." (Emphasis added.) *State v. Champion*, 109 Ohio St. 281, 286-287, 142 N.E. 141 (1924). This means that the use of force must be intentional—not accidental. The only additional "intent" required is the intent to repel or escape force, not an intent to use force to harm or kill another person.

{¶ 19} Wilson's use of force here was intentional. He admitted to grabbing the gun and firing it; he did not claim that he fired the weapon by accident or that the gun went off at random. He also testified that he fired the gun to escape or repel Reffett and to "scare him and back him off."

{¶ 20} More recently, this court reiterated that a person may use deadly force in self-defense when he or she (1) " 'was not at fault in creating the situation giving rise to the affray' "; (2) " 'had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force' "; and (3) " 'did not violate any duty to retreat or avoid the danger.' " (Brackets added in *Messenger*.) *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). Our case law provides that the only requisite state of mind or intent that a defendant must have had to assert self-defense is that he or she intended to use force and that such force

was used to repel or escape his or her attacker. R.C. 2901.05(B)(1) and our case law do not require any other state of mind, let alone an intent to kill or maim.

{¶ 21} In this case, according to Wilson's testimony (which the jury could believe or disregard when deciding whether Wilson acted in self-defense), (1) he was not at fault in creating the situation, because Reffett pointed a gun at him, (2) he had a bona fide belief that Reffett was going to shoot him because during the altercation, Reffett said, "I'll smoke you out here," and then pointed a gun at Wilson, which caused Wilson to feel "scared for [his] life" and believe that his only means of escape was to shoot out the car window ("I grabbed [the gun] as fast as I could to protect me and [the passenger]"), and (3) he did not have a duty to retreat, *see* R.C. 2901.09(B). The trial court and the Second District, however, imposed an additional, unlawful burden of production on Wilson by requiring that he admit to intending to harm or kill Reffett in order to proceed on his self-defense claim. By instituting this level of intent, the state and both lower courts have read words into the statute and controlling case law that are not there.

### 3. Wilson presented an affirmative defense

{¶ 22} The state argues, and the Second District agreed, that Wilson could not proceed on a self-defense theory, because he was not presenting it as a true defense but, rather, as a negation of the intent required for felonious assault. Self-defense must be a "true" defense—a justification for the conduct—not a negation of the elements of the underlying charge. *See State v. Dykas*, 185 Ohio App.3d 763, 2010-Ohio-359, 925 N.E.2d 685, ¶ 18 (8th Dist.).

{¶ 23} Wilson did not attempt to negate the intent required for felonious assault, but he did try to justify his felonious assault. Unlike self-defense, the state of mind required for felonious assault is set forth in the statute defining the offense: "No person shall *knowingly* * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *." (Emphasis added.) R.C. 2903.11(A)(2). "A person acts knowingly, regardless of purpose, when the person

is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 24} Intentionally shooting toward or in the vicinity of another person when there is a risk of injury meets the "knowingly" element of felonious assault. *See, e.g.*, *State v. Henderson*, 1st Dist. Hamilton No. C-130541, 2014-Ohio-3829, ¶ 27-28 (defendant fired multiple shots toward another person outside a store); *State v. Jordan*, 8th Dist. Cuyahoga No. 73364, 1998 WL 827588, *12 (Nov. 25, 1998) ("[f]iring a gun in a person's direction is sufficient evidence of felonious assault"); *State v. Gregory*, 90 Ohio App.3d 124, 131, 628 N.E.2d 86 (12th Dist.1993) ("[t]he shooting of a gun in a place where there is a risk of injury to one or more persons supports the inference that [the defendant] acted knowingly"); *State v. Phillips*, 75 Ohio App.3d 785, 792, 600 N.E.2d 825 (2d Dist.1991) (defendant's "intent to cause physical harm to the five individuals could be inferred from his having shot a gun randomly in the direction of each individual"). While the dissent argues that this analysis is too narrow, on the contrary, the dissent's position is too broad—it reads the "knowingly" element out of the statute and argues that Wilson needed to admit that he intended to cause harm to Reffett. *See* dissenting opinion at ¶ 33-36. As explained above, for more than thirty years, courts across Ohio have consistently found that intentionally firing a weapon in the direction of another person is sufficient to meet the "knowingly" element of the felonious-assault statute. While the dissenting opinion criticizes our reliance on decisions from several courts of appeals, it does not claim that the conclusions reached in those cases are incorrect. *See id.* at ¶ 38.

{¶ 25} Wilson admitted multiple times during his testimony at trial that he pointed a gun out the car window and fired a shot, but he said that he did not intend to strike Reffett with the shot. Regarding the dent in Reffett's truck allegedly caused by the bullet from the gun Wilson used, Wilson stated that "I didn't aim [the

gun] at the vehicle at all, but [Reffett] was so close to me [that the bullet] couldn't do nothing but probably hit there." We recently held that the burden of production in self-defense "is 'not a heavy one,' " *State v. Palmer*, __ Ohio St.3d __, 2024-Ohio-539, __ N.E.3d __, ¶ 20, quoting *Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, at ¶ 22, and that "[t]he question is not whether the evidence should be believed but whether the evidence, *if believed*, could convince a trier of fact, beyond a reasonable doubt, that the defendant was acting in self-defense" (emphasis sic), *id.* at ¶ 21. Wilson's case nearly mirrors Palmer's—both men fired shots toward another person and testified to the thought processes that led them to shoot (though Palmer actually hit his perceived assailant). *See id.* at ¶ 11-13. Both men were found not guilty of attempted murder but guilty of felonious assault, and both men were denied a self-defense jury instruction (though Palmer's counsel requested the instruction). *See id.* at ¶ 13-14. Just like in *Palmer*, a jury would be free to believe Wilson or disregard his testimony, but Wilson was entitled to a self-defense jury instruction because his testimony tended to support his claim of self-defense and was not a negation of the element of intent required for the offense of felonious assault.

### C. Wilson's counsel was ineffective

{¶ 26} Given that Wilson's testimony supported the intent element for self-defense, we now review whether Wilson's counsel was ineffective by failing to request a self-defense jury instruction. To prevail on a claim of ineffective assistance of counsel, Wilson must prove (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that his counsel's deficient performance prejudiced him, resulting in a fundamentally unfair or unreliable outcome of the proceeding. *See Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 27} While we typically defer to trial counsel's decisions as a matter of strategy, there is little doubt here that Wilson's counsel's failing to request the self-

defense jury instruction—the only defense Wilson's testimony supported[2]—cannot be chalked up to trial strategy. *See id.* at 688-689. We agree with the appellate-court decisions that have determined that failing to request a self-defense jury instruction in an assault case may satisfy the first prong of *Strickland*. *See State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 35 (2d Dist.); *State v. Patterson*, 2d Dist. Greene No. 2015-CA-57, 2016-Ohio-2750, ¶ 22. And notably, the dissenting opinion does not attempt to distinguish these cases in its analysis.

**{¶ 28}** The second prong is also met here. Juries are entitled to "all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. The jury found Wilson not guilty of the attempted murder charge, which suggests that the jury had some question regarding Wilson's intent. Further, it is unknown who the jury may have believed and how it may have weighed the evidence if it was instructed to consider Wilson's claim of self-defense. There was conflicting testimony from Wilson and Reffett, the gas station's surveillance cameras did not capture the angle between the vehicles to show whether Reffett pointed a gun at Wilson, and the parties disagreed on where Wilson aimed the gun when he fired it.[3]

### III. CONCLUSION

**{¶ 29}** The requisite state of mind or intent that a defendant must have had to be entitled to a self-defense jury instruction is an intent to use force to repel or escape force. The trial court and Second District erred in holding that Wilson needed to show a different state of mind or intent—that is, an intent to harm or kill another person. Under the evidence presented in this case, Wilson was entitled to

---

2. In his closing argument, Wilson's counsel argued that Wilson may not have been the shooter, even though Wilson testified repeatedly that he had fired the weapon.

3. While the state posits that Wilson's shot hit Reffett's truck door, Wilson denied this during his trial testimony.

a self-defense jury instruction; thus, his counsel was prejudicially ineffective by failing to request that instruction. We therefore reverse the judgment of the Second District Court of Appeals, vacate Wilson's conviction, and remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

DONNELLY and BRUNNER, JJ., concur.

FISCHER, J., concurs in judgment only.

DETERS, J., dissents, with an opinion joined by KENNEDY, C.J., and DEWINE, J.

_____

**DETERS, J., dissenting.**

{¶ 30} Because Tyler Wilson's claim that he did not intend to hurt Billy Reffett was not an affirmative defense to the charge of felonious assault, he was not entitled to a self-defense jury instruction. The lead opinion sees it otherwise and compounds its error by deciding an ineffective-counsel claim that was not raised before this court, so I respectfully dissent.

**The evidence presented at trial did not constitute an affirmative defense**

{¶ 31} Wilson asserts a single proposition of law, in which he argues that he was entitled to a self-defense jury instruction. "[A] court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings." *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). The first question then is whether there was sufficient evidence presented to warrant a self-defense jury instruction. The answer requires a review of self-defense as an affirmative defense.

{¶ 32} Ohio has long recognized self-defense as an affirmative defense. *State v. Martin*, 21 Ohio St.3d 91, 93, 488 N.E.2d 166 (1986), *superseded by statute on other grounds as stated in State v. Brooks*, 170 Ohio St.3d 1, 2022-Ohio-2478,

208 N.E.2d 751, ¶ 15. The recent change to R.C. 2901.05(B) regarding the burdens of production and proof for self-defense, *see generally State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 15-22, has not changed self-defense's categorization as an affirmative defense, *see* R.C. 2901.05(A). This court has explained affirmative defenses such as self-defense this way: "[Affirmative defenses] represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather, they represent a substantive or independent matter 'which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true.' " *State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973), quoting 1 Anderson, *Wharton's Criminal Evidence*, Section 19, at 54-55 (12th Ed.1955).

**{¶ 33}** On this much the lead opinion agrees, writing that "[s]elf-defense must be a 'true' defense—a justification for the conduct—not a negation of the elements of the underlying charge." Lead opinion, ¶ 22. But the lead opinion goes on to determine that Wilson's version of events constituted the assertion of a "true" defense and not a negation of the elements of felonious assault. In doing so, the lead opinion focuses on the mens rea required for felonious assault. Distilled, the lead opinion's reasoning goes something like this: Felonious assault requires a person to act knowingly. Intentionally shooting a gun satisfies the knowingly element. Wilson therefore did not negate an element of felonious assault when he admitted that he had intentionally fired the gun. The problem with the lead opinion's reasoning is that its focus is too narrow.

**{¶ 34}** Wilson was charged with felonious assault under R.C 2903.11(A)(2), which makes it a crime for a person to knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." There was no evidence that Wilson caused physical harm to Reffett, so the state of

Ohio had to prove that Wilson attempted to cause physical harm to Reffett—a premise Wilson flatly denied.

{¶ 35} At trial, Wilson conceded that he had intentionally fired the gun that was in the car he was driving, but he was adamant that he had not intended to hurt Reffett:

> Q. Did you intend to strike [Reffett]?
>
> A. No. I intended to scare him and back him off * * *.

Wilson repeated this assertion multiple times during his testimony. He also questioned whether the shot he fired had caused the damage to Reffett's truck: "I don't think that bullet hole was even from me. That wasn't even a bullet hole. That dent. That close. I just aimed out the window and fired up."

{¶ 36} Based on his version of the shooting, Wilson did not " 'conced[e] that the facts claimed by the prosecution [were] true,' " *Poole*, 33 Ohio St.2d at 19, 294 N.E.2d 888, quoting Anderson, Section 19, at 54-55. Instead, Wilson sought to negate the "attempt to cause physical harm" element of felonious assault. If the jury had believed Wilson, it would not have found him guilty of felonious assault. His defense—that he had fired only a warning shot—was not an affirmative defense.

{¶ 37} The lead opinion seems to accept Wilson's argument that the court of appeals' decision "impos[ed] a heightened burden of production on him in concluding that in order to assert self-defense, he had to concede that he intended to kill or harm Reffett." Lead opinion at ¶ 10. But because Wilson did not present evidence of a true affirmative defense, the allocation of burden in R.C. 2901.05 did not apply. The ultimate burden to prove beyond a reasonable doubt all the elements of felonious assault—including "caus[ing] or attempt[ing] to cause physical harm,"

R.C 2903.11(A)(2)—remained with the state. And nothing prevented Wilson from arguing that the evidence on that element had not been proved.

{¶ 38} The court of appeals' decisions cited by the lead opinion do not persuade otherwise. Notably, those cases are not about whether a self-defense jury instruction was warranted or whether the defendant had caused or attempted to cause physical harm. Instead, those cases addressed the sufficiency or manifest weight of the evidence regarding the mens rea element of felonious assault. *See State v. Henderson*, 1st Dist. Hamilton No. C-130541, 2014-Ohio-3829, ¶ 23, 27-28; *State v. Jordan*, 8th Dist. Cuyahoga No. 73364, 1998 WL 827588, *12 (Nov. 25, 1998); *State v. Gregory*, 90 Ohio App.3d 124, 131, 628 N.E.2d 86 (12th Dist.1993). And though the lead opinion characterizes this dissent as arguing about what evidence would be sufficient to establish an attempt to cause physical harm, *see* lead opinion at ¶ 24, that's not the point. My concern is not the absence of direct evidence. Quite the opposite—the problem is that there is evidence in the record of an active denial by Wilson that he attempted to cause physical harm.

{¶ 39} Because Wilson attempted to negate an element of felonious assault at trial, he did not assert a true affirmative defense. He was therefore not entitled to a self-defense jury instruction. We should affirm the court of appeals' judgment for this reason.

### Counsel was not ineffective

{¶ 40} The sole proposition of law presented by Wilson and accepted for review by this court was as follows: "Is the accused entitled to a self-defense instruction for firing a warning shot at an armed aggressor, or must they [sic] shoot to injure or kill in order to receive the instruction at trial?" *See* 169 Ohio St.3d 1430, 2023-Ohio-381, 202 N.E.3d 717. The discussion above disposes of the proposition. Wilson was not entitled to a self-defense jury instruction. That should be the end of this court's consideration of Wilson's appeal. But the lead opinion's discussion ranges beyond Wilson's proposition of law.

{¶ 41} The lead opinion concludes that Wilson's proposition of law represents only a "slight difference in the wording," lead opinion at ¶ 13, from the assignment of error that he raised in the court of appeals, which stated: "Trial counsel provided ineffective assistance of counsel by failing to ask that the jury be instructed on self-defense and erroneously conceding that self-defense does not apply to the facts and circumstances of Mr. Wilson's case," 2022-Ohio-3763, ¶ 30. And so the lead opinion goes on to consider whether Wilson's trial counsel was ineffective. But Wilson did not present a proposition of law about ineffective assistance of counsel in his memorandum in support of jurisdiction. The lead opinion declares that "this court understood Wilson's argument to include his ineffective-assistance-of-counsel claim when we accepted his appeal." Lead opinion at ¶ 14. The source of this understanding is unclear. When we accept a jurisdictional appeal, we do so on the proposition of law presented by the appellant. No amount of squinting or reading between the lines will reveal any claim regarding ineffective assistance of counsel in the accepted proposition that Wilson presented.

{¶ 42} Our review should be limited to addressing the single proposition of law set forth by Wilson and accepted for review by a majority of this court. Nevertheless, because the lead opinion has addressed the issue, I will briefly discuss why its conclusion regarding the ineffective-counsel claim is incorrect.

{¶ 43} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the

circumstances, the challenged action might be considered sound trial strategy." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995), citing *Strickland* at 689, and *State v. Wickline*, 50 Ohio St.3d 114, 114, 126, 552 N.E.2d 913 (1990).

{¶ 44} The lead opinion briefly nods at the notion that we "typically defer to trial counsel's decisions as a matter of strategy" before it concludes that there was "little doubt" that counsel's decision not to request a self-defense jury instruction could not be "chalked up to trial strategy." Lead opinion at ¶ 27. A closer look at what happened at trial, however, reveals that defense counsel's strategy was not unreasonable.

{¶ 45} The lead opinion states that "[w]hile Wilson initially presented a theory of self-defense, his counsel abandoned that theory at the suggestion of the trial court." *Id.* at ¶ 8. This assertion glosses over the discussion that took place before closing arguments:

> THE COURT: * * *
>
> At first I thought we were looking at a self-defense case, but the more I heard the defendant testify, I believe that the defense in this case is that the defendant did not aim the gun at the victim, did not intend to hurt the victim or kill the victim.
>
> His testimony was that he fired the gun in the air to scare them off. So to me, that's the defense.
>
> Now, that being said, because of that I don't think a self-defense instruction is warranted, but I certainly think the defense has every right to argue that the reason he fired the shot in the air was because he was afraid perhaps for his life.
>
> I don't have a problem with that argument. But I don't see it as a true self-defense case because he's saying he didn't fire the shot at the victim.

Is that how you see it, [defense counsel]?  Or [prosecutor]?

[DEFENSE COUNSEL]: Yes.

[PROSECUTOR]: I agree, yes.

[DEFENSE COUNSEL]: I agree too.

THE COURT: Okay.  So I don't want to prevent the defense in any way from arguing that the defendant was afraid for his life and that's the whole reason why he grabbed the gun and fired it.

But again, I think the defense from that point is that I fired the gun into the air to scare them off, which isn't really, doesn't really fit with a true self-defense claim.  But again, [defense counsel], I will give you the full latitude to argue essentially what the defendant's testimony was.

[DEFENSE COUNSEL]:  I believe that's accurate.  You described it.

In light of the trial court's explanation, defense counsel's not requesting a jury instruction on self-defense was reasonable.

{¶ 46} The lead opinion also discounts defense counsel's closing argument. While the lead opinion mentions in a footnote that during closing argument, defense counsel questioned whether Wilson was the shooter, lead opinion at ¶ 27, fn. 2, the lead opinion ignores the core of defense counsel's argument, which was that Wilson was not shooting at Reffett but was instead firing a warning shot:

[Reffett's] in an elevated position over him, brandishing a weapon.  [Wilson's] driving a car that he knows doesn't start all the time.  How would anybody here feel in that position?  Vulnerable? Scared?  He testified he didn't shoot at him.

A bunch of you here are into guns, like I am, and anybody who has ever shot a gun knows that a .9 millimeter bullet will go through sheet metal. He didn't intend to shoot [Reffett]. It wouldn't have gone straight up.

{¶ 47} Defense counsel's closing argument makes clear that he did not "abandon" the self-defense theory. He simply understood that Wilson's version of events did not constitute a true affirmative defense. He took pains to explain the distinction to the jury:

There is no proof to show that [Wilson] committed the crimes that he's charged with. He didn't really act in self-defense. Self-defense would be if he tried to shoot somebody. That's true self-defense. There is a bearing there of self-defense, but he was acting more of himself than others when he shot in the air.

He wasn't shooting at the person, so that's not true self-defense. There is an element there, but that's why you need it. That's what you need to think about. He did not intend to murder, did not intend to hit. He [tried] to ward off and scare, and get out of that situation, and that's why he took off and was pursued by a man with a gun that was waving it out the window.

* * *

So when you go back there and deliberate, I just want to point out the State has not met its burden. He did not attempt to hurt or murder anybody. He shot in the air in defense of himself and his passenger.

Reviewed with the appropriate deference, defense counsel's performance did not fall "below an objective standard of reasonable representation," *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph two of the syllabus.

**Conclusion**

{¶ 48} Wilson attempted to negate an element of felonious assault by claiming at trial that he did not intend to shoot at Reffett. The evidence presented at trial did not constitute a true affirmative defense. Therefore, a self-defense jury instruction was not warranted. And in any event, trial counsel was not ineffective. Because the lead opinion sees it differently, I respectfully dissent.

KENNEDY, C.J., and DEWINE, J., concur in the foregoing opinion.

_____

Daniel P. Driscoll, Clark County Prosecuting Attorney, and Andrew P. Pickering and Christian W. Sorg, Assistant Prosecuting Attorneys, for appellee.

Kate L. Bowling, for appellant.

Russell S. Bensing, urging reversal for amicus curiae, Ohio Association of Criminal Defense Lawyers.

_____