[Cite as *State v. Moser*, 2025-Ohio-4422.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,
CITY OF KENT,

          Plaintiff-Appellee,

- vs -

RANDALL WILLIAM MOSER,

          Defendant-Appellant.

CASE NO. 2025-P-0002

Criminal Appeal from the
Municipal Court, Kent Division

Trial Court No. 2024 CRB 00908 K

---

## OPINION AND JUDGMENT ENTRY

Decided: September 22, 2025
Judgment: Affirmed

---

*Connie J. Lewandowski*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Alisa Boles*, A.E. Boles, L.L.C., 35 East 202nd Street, Euclid, OH 44123 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1}  Appellant, Randall William Moser, appeals the judgment imposing sentence following a bench trial wherein the trial court found him guilty of criminal damaging. We affirm.

{¶2}  On August 22, 2024, complaints were filed in the trial court charging Moser with criminal damaging or endangering, a second-degree misdemeanor, in violation of R.C. 2909.06(A)(1); and disorderly conduct by intoxication, a fourth-degree misdemeanor, in violation of R.C. 2917.11(B)(2).

{¶3} Moser pleaded not guilty. Thereafter, the case was scheduled for bench trial. On the morning of trial, defense counsel orally moved for a continuance to allow the defense to file a jury demand. The trial court denied the motion.

{¶4} Prior to commencing trial, the prosecutor informed the court that it would not be pursuing the disorderly conduct charge. Following trial, the court found Moser guilty of criminal damaging and set the matter for sentencing. In an entry dated December 30, 2024, the trial court sentenced Moser to 90 days in jail, with the jail sentence suspended upon certain conditions.

{¶5} Moser appeals the judgment, assigning four errors for our review.

{¶6} In his first assigned error, Moser maintains:

{¶7} "The trial court erred when it denied a criminal defendant's request for a trial by jury on the basis that it was untimely without ascertaining the date he received notice of the trial date."

{¶8} Civ.R. 23(A) provides, in relevant part:

> In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto.

{¶9} Here, just prior to the commencement of trial, defense counsel orally moved for a continuance to allow counsel to file a jury demand and have a jury trial set. Defense counsel indicated that Moser had informed him that morning that he wished to have a jury trial. Defense counsel stated that the demand would be "within the 10-day period," but made no reference as to when notice of the bench trial was received. Defense counsel

Case No. 2025-P-0002

stated, "we would ask for a continuance and allow me the opportunity to file a jury demand for him and to have a jury trial set." The State responded that it would not ordinarily object, but it had subpoenaed a witness who was required to take time off work to attend trial that day, and Moser did not file a timely written demand for a jury trial. The trial court denied the motion, and the case proceeded to bench trial.

{¶10} Moser maintains that the trial court erred in denying the motion without ascertaining when Moser received notice of the bench trial, relying on *State v. Pulsifer*, 1993 WL 130112 (11th Dist. Mar. 26, 1993). However, the circumstances in the present case are distinguishable from those in *Pulsifer*. In that case, the defendant filed a jury demand on June 29, 1992, which the trial court overruled the next day, holding that the demand was filed less than ten days prior to the scheduled trial of July 2, 1992. *Id.* at *1. In applying Crim.R. 23(A), the trial court also relied on June 17, 1992, as the date the notice was sent pursuant to a notice that "was not time stamped and, therefore, not an official part of the court's journal," instead of relying on the evidence presented by the defendant that his trial counsel, "did not receive notification of the trial date until June 25, 1992." *Pulsifer* at *1. Defense counsel indicated that, upon receipt of the trial notice, he "immediately prepared a jury demand which was filed and time stamped on the next Monday." *Id.* Thus, on appeal, this court determined that the record supported that the jury demand was timely filed pursuant to Crim.R. 23(A), as it was filed within three days of the receipt of the notice of the trial date. *Pulsifer* at *1; *see* Crim.R. 45(A) ("When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in computation.").

Case No. 2025-P-0002

{¶11} Here, unlike *Pulsifer*, defense counsel did not file a written demand for a jury trial, and counsel made no argument that a jury demand could still be timely filed under the Criminal Rules based on the date of receipt of the notice. To the contrary, defense counsel's argument in support of the continuance implicitly acknowledged that a continuance of the trial was necessary for a demand to be timely filed. Further, Crim.R. 23(A)'s written demand requirement serves important administrative purposes—it allows courts to schedule jury trials appropriately and ensures defendants make deliberate choices about trial format. Allowing last-minute oral requests would undermine these purposes.

{¶12} Accordingly, Moser did not comply with the requirements of Civ.R. 23(A), nor did he advance an argument that time remained for him to still comply when he orally moved for a continuance on the morning of the bench trial.

{¶13} Therefore, Moser's first assigned error lacks merit.

{¶14} In his second and third assigned errors, Moser argues:

> 2. The trial court erred in denying defendant's Rule 29 motion because the prosecutor did not provide sufficient evidence that Appellant knowingly damaged a vehicle while throwing railroad track ballast in order to escape from an assai[l]ant.

> 3. The trial court erred in convicting Appellant of criminal damaging because overlooking his assertions that he was in fear of his life while retreating from a dangerous individual who had just assaulted him went against the manifest weight of the evidence.

{¶15} The question of whether sufficient evidence supports a conviction "is a test of adequacy," which we review de novo. *State v. Thompkins*, 1997-Ohio-52, ¶ 23. "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact

to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 2020-Ohio-6670, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶16}  Unlike the standard for the sufficiency of the evidence, the "[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence . . . to support one side of the issue rather than the other.*'" (Emphasis in original.) *Thompkins* at ¶ 24, quoting *Black's Law Dictionary* (6th Ed. 1990). When considering challenges to the weight of the evidence, an appellate court reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at ¶ 25, quoting *Martin* at 175.

{¶17}  Thus, "'a determination of whether a conviction is or is not supported by the weight of the evidence 'necessarily rests on the existence of sufficient evidence.'" *State v. DiBiase*, 2012-Ohio-6125, ¶ 38 (11th Dist.), quoting *State v. Pesec*, 2007-Ohio-3846, ¶ 44 (11th Dist.).

{¶18}  Here, Moser was convicted of one count of criminal damaging, in violation of R.C. 2909.06(A)(1), which provides, "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent . . . [k]nowingly, by any means. . . ." R.C. 2901.22(B) provides:

Case No. 2025-P-0002

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶19} In support of the criminal damaging charge, the State presented the testimony of two of Moser's neighbors that live in apartments in his building. The first neighbor, the victim in this matter, testified that, on the night of August 21, 2024, she was watching television in her home, and her son and Moser were present. The three had been drinking alcohol, and Moser appeared intoxicated. At some point, Moser went outside and called for the victim's son to come outside to fight him. After the victim's son went outside, her son "smacked [Moser] in his face," and Moser fell. After Moser returned to his feet, the victim's son again "smacked [Moser] in his face," again causing Moser to fall. The victim's son then went home, and Moser "picked up a cone, threw it at the house, [and] was calling [the victim] all kinds of names," at which point the victim went back inside and watched television.

{¶20} Thereafter, the victim became aware of additional activity outside after receiving a call from her upstairs neighbor. When the victim went outside to check, Moser was outside calling her "all kinds of nasty names." The victim then called the police. When the officers arrived, the victim observed that the back window of her vehicle was shattered, there were dents in the hood, and there were scratches on the front windshield. The victim identified an exhibit containing a written estimate of costs to repair her vehicle in the amount of $2,095.52.

Case No. 2025-P-0002

{¶21} On cross-examination, the victim confirmed that she did not see who caused the damage to her vehicle or how it was caused.

{¶22} The State then presented the testimony of the victim's upstairs neighbor, who testified, on the night at issue:

> First I was woke up by all kinds of noise, commotion going on outside, and I thought whatever, it doesn't have to do with me. I stayed out of it.
>
> Cops ended up coming out. They left. My son calls and says, mom, I'm coming over. I walk out onto my front porch, which is an upstairs apartment, to watch [Moser] staggering down the driveway, reaches down, picks up a brick and looks up at me and goes "B[,"] I hope you see this, and I'm saying "B" instead of the cuss word, and started throwing it at [the victim's] windows.

{¶23} The upstairs neighbor indicated that she and Moser were close enough to hear each other during the verbal exchange, and he kept "calling [her] a criminal[.]" When the upstairs neighbor saw the second brick hit the victim's car, she called the victim. Thereafter, the police again responded. The upstairs neighbor assumed that Moser was intoxicated because he "staggered down the driveway . . . ."

{¶24} Following the upstairs neighbor's testimony and admission of the State's exhibit, the State rested. Moser then moved for acquittal pursuant to Crim.R. 29. The court denied the motion.

{¶25} Thereafter, Moser testified in his own defense that, on the night at issue, he was at the victim's apartment drinking alcohol and "smokin' dope" with the victim and her son. Moser maintained that the victim's son had recently been released from prison for rape and had been beaten up at a bar, suffering injury to his head that had required 15 staples. Moser told the victim's son that he was deeply sorry, and he was going to say a

prayer for the son, at which point the son "just bl[ew] up" at him, and began "cussing Moser out . . . with very foul language . . . ." Moser then left, and the son came outside. The victim's son then twice "slapped" Moser, who had a severe ear infection and was suffering from a pinched nerve affecting his neck. The impacts of the slaps knocked Moser off his feet. Moser then picked up a rock and threw it at the son because Moser feared for his life. Moser recalled that he was in significant pain and remembered waking up in jail after the incident. Moser was unaware of the presence of the victim's vehicle during the altercation.

{¶26} On cross and redirect examination, Moser confirmed that he had been drinking alcohol and smoking "drugs" at the victim's apartment prior to the incident with the victim's son, but he did not know if the substances were "spiked or not." He maintained that, although he did not specifically notice the victim's vehicle during the affray with the victim's son outside, the altercation occurred in the driveway, near where the victim regularly parks her vehicle.

{¶27} After Moser testified, the defense rested and renewed its Crim.R. 29 motion, which the trial court overruled.

{¶28} After closing arguments the trial court stated that it "found credibility in most of what all the witnesses had to say." The trial court found "most compelling" the testimony of the upstairs' neighbor. The court stated:

> She had no skin in this game. She was minding her own business, doing her own thing. She was awakened by the disturbance. She was aware that the police were there, not once but twice, and that Mr. Moser's further actions continued by her testimony less than five minutes after the police left. Alcohol, even weed does strange things to people who probably don't act the way we normally would . . . .

Case No. 2025-P-0002

{¶29}  Based on the above, the manifest weight of the evidence supports a timeline consistent with the testimony of the victim and the upstairs neighbor: the physical altercation with the victim's son ended with the son going home; the victim went inside to watch TV; later, the upstairs neighbor called the victim about additional activity; then the victim went outside and found her car damaged; and the upstairs neighbor's testimony confirms seeing Moser alone throwing rocks. The reasonable inference drawn from this testimony—including that Moser looked at the neighbor and said he hoped she could see "this" before throwing bricks at the car—is that Moser "knowingly" caused damage to the vehicle.

{¶30}  On appeal, Moser challenges the evidence as to whether he "knowingly" damaged the vehicle. Moser appears to argue that any damage he may have caused the victim's vehicle was an inadvertent result of his attempt to ward off the victim's son by throwing rocks at him. He posits that the upstairs neighbor incorrectly perceived Moser's actions and statements and suggests that, when the upstairs neighbor came outside her apartment, she had an obstructed view of the altercation between the victim's son and Moser. Moser attempts to reconcile the upstairs neighbor's testimony with the premise that he was actively defending himself from the victim's son's attack while the upstairs neighbor was watching him from her porch. He maintains that the upstairs neighbor's testimony that Moser was staggering down the driveway "supports his claim he was making his way down the driveway trying to get away." Moser also contends that, "[w]hen he looked up to where she was standing on the upstairs porch and said he hopes she can see this, she might have mistaken his comment as antagonistic, when he really was hoping that someone was bearing witness to his assault and escape." Further, when the

upstairs neighbor heard Moser call her a criminal, he suggests the comment was likely directed at the victim's son, who had just been released from prison, and not the upstairs neighbor.

{¶31} The evidence does not support Moser's view of the upstairs neighbor's testimony. There is no dispute that the upstairs neighbor did not testify to seeing anyone assaulting Moser, but there is no indication that her view of the incident was in any way impaired. Instead, the upstairs neighbor testified that, after the initial commotion, while she waited outside for her son to arrive, she saw Moser picking up the bricks. Her testimony that Moser was "staggering" in the driveway was consistent with the victim's testimony that Moser was staggering because he was intoxicated. When Moser interacted with the upstairs neighbor, he did not merely say that he hoped she "saw this," as could be construed as he hoped she was bearing witness to his assault. Instead, the upstairs neighbor testified that the encounter between Moser and herself was antagonistic in that Moser looked "up at [her] and goes 'B[,'] I hope you see this . . . ." The upstairs neighbor explained that she was using the letter "B" instead of "the cuss word . . . ."

{¶32} Further, the upstairs neighbor testified that Moser called her a criminal, and she responded back to him that he was committing a criminal act, suggesting that Moser and the upstairs neighbor, not the victim's son, were engaged in an acrimonious dialogue. The upstairs neighbor further testified that she called the victim when the second brick hit the victim's vehicle. The victim testified that she received the phone call after her son attacked Moser and left the premises. Based on the foregoing, the manifest weight of the evidence does not support that the victim's son was still present on the property when Moser threw bricks at the victim's car.

Case No. 2025-P-0002

{¶33} Moser further appears to challenge the credibility of the victim and the upstairs neighbor. Moser maintains that the victim did not recall that the police had been called twice to the property and admitted to having consumed alcohol. Moser maintains that the upstairs neighbor had "just been pulled out of her sleep" by the commotion outside.

{¶34} Under the circumstances, we defer to the fact-finder's determinations on issues of credibility. *State v. Fiederer*, 2020-Ohio-4953, ¶ 13 (11th Dist.).

{¶35} Moser further argues that his conviction was against the weight of the evidence because the evidence established that he acted in self-defense.

{¶36} With respect to self-defense, R.C. 2901.05(B)(1) provides:

> A person is allowed to act in self-defense. . . . If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense. . . , the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶37} Here, because we have determined above that the weight of the evidence supports that the aggressor, the victim's son, left prior to Moser throwing the bricks that damaged the vehicle, the weight of the evidence does not demonstrate that he was acting in self-defense when he used the force that resulted in that damage. Self-defense requires imminent threat. Thus, the evidence does not support self-defense as a justification for the offense.[1]

---

1. This opinion should not be read to imply that self-defense would be applicable to this case if the aggressor were still present at the time that Moser used the force of throwing the bricks. Instead, having resolved this issue on the basis that the weight of the evidence indicates that the aggressor was no longer present when the force was used, we specifically decline to reach any other issues as to the propriety of self-defense in this case, e.g., whether self-defense is a permissible defense to a property crime under these

Case No. 2025-P-0002

{¶38} Based on the foregoing, this is not the exceptional case where the evidence weighs strongly in Moser's favor. Accordingly, the conviction is not against the weight of the evidence, and it is necessarily supported by sufficient evidence. Therefore, Moser's second and third assigned errors lack merit.

{¶39} In his fourth assigned error, Moser contends:

{¶40} "Appellant was denied effective assistance of counsel because his attorney negated his affirmative defense of self-defense."

{¶41} To prevail on a claim of ineffective assistance of counsel, "a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989); and *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Davis* at ¶ 10, citing *Bradley* at paragraphs two and three of the syllabus.

{¶42} During defense counsel's closing argument, he stated:

> Mr. Moser has gone on to testify that he was on the ground, that he was throwing the rock in self-defense, and while it's not a self-defense claim that is before the Court, the allegation is that this is criminal damaging, which is that he knowingly caused damage or a risk of damage to a car.

---

circumstances, and issues pertaining to whether Moser's version of events negated only the mens rea element of knowingly as opposed to presenting a justification for the offense. *See State v. Brown*, 88 Ohio App.3d 509, 513 (11th Dist. 1993) ("self-defense is inapplicable to a charge of criminal damaging"); *State v. Woodson*, 2022-Ohio-2528, ¶ 78 (6th Dist.) (self-defense can be extended to property crimes in certain circumstances); *State v. Wilson*, 2024-Ohio-776, ¶ 22 (plurality) ("Self-defense must be a 'true' defense— a justification for the conduct—not a negation of the elements of the underlying charge"), and *id.* at ¶ 33 (Deters, J., dissenting) (agreeing that self-defense is a true defense, but disagreeing as to the lead opinion's application of self-defense in that case).

Case No. 2025-P-0002

{¶43} As addressed in our discussion of Moser's second and third assigned errors, the weight of the evidence supports that the aggressor, the victim's son, left prior to the force that was used that damaged the victim's car, and therefore, the evidence did not demonstrate self-defense. Accordingly, there is not a reasonable probability that the proceedings would have been different if defense counsel had not made this statement as to the inapplicability of self-defense during closing argument. Thus, Moser has not demonstrated that he was prejudiced by defense counsel's statement. *State v. Madrigal*, 2000-Ohio-448, ¶ 49 ("A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." (Citing *Strickland* at 697.)).

{¶44} Therefore, Moser's fourth assigned error lacks merit.

{¶45} The judgment is affirmed.


SCOTT LYNCH, J., concurs,

JOHN J. EKLUND, J., concurs in judgment only.

Case No. 2025-P-0002

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error lack merit. It is the judgment and order of this court that the judgment of the Portage County Municipal Court, Kent Division, is affirmed.

Costs to be taxed against appellant.

_____
JUDGE EUGENE A. LUCCI

_____
JUDGE SCOTT LYNCH,
concurs

_____
JUDGE JOHN J. EKLUND,
concurs in judgment only

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-P-0002