

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**NATHAN JON OJEDA,**
Defendant-Appellant.

Supreme Court Case No. CRA24-003
Superior Court Case No. CF0011-23

## OPINION

**Cite as: 2025 Guam 5**

Appeal from the Superior Court of Guam
Argued and submitted on November 26, 2024
Hagåtña, Guam

Appearing for Defendant-Appellant:
Leevin Taitano Camacho, *Esq.*
Camacho & Taitano LLP
204 Hesler Pl., Ste. 203B
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Nathan M. Tennyson, *Esq.*
Office of the Attorney General
Appellate & Writing Division
590 S. Marine Corps Dr., Ste. 802
Tamuning, GU 96913



**E-Received**
9/8/2025 4:20:38 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

**[1]**     Defendant-Appellant Nathan Jon Ojeda appeals his conviction of aggravated murder with a special allegation of possession or use of a deadly weapon in the commission of a felony.  Ojeda argues that his right to the effective assistance of counsel was violated because his attorneys[1] did not provide him with adequate legal assistance in three instances.  First, Ojeda argues trial counsel was ineffective for moving to remove the jury instructions on self-defense.  We conclude that Ojeda fails to show this constitutes deficient performance.  Second, Ojeda argues trial counsel's failure to take reasonable steps to preserve or obtain the victim's home security camera footage was ineffective.  This failure was deficient performance.  However, Ojeda fails to demonstrate prejudice.  Third, Ojeda claims trial counsel was ineffective because they did not request an adverse inference instruction against the government for their failure to preserve the security footage.  Ojeda fails to show this constituted deficient performance.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**[2]**     Ojeda was indicted on four charges, including aggravated murder (as a first-degree felony) with a special allegation of possession or use of a deadly weapon in the commission of a felony.[2] The indictment resulted from a fatal shooting on January 4, 2023, around 5:00 p.m., where the

---

[1] The trial court appointed the Public Defender Service Corporation as Ojeda's counsel.  Based on the record, more than one attorney was involved in Ojeda's representation.  Unless otherwise noted, we refer to his attorneys collectively as "trial counsel" throughout this opinion.

[2] The remaining charges were: (1) the lesser-included offense of murder (as a first-degree felony) with special allegation: possession or use of a deadly weapon in the commission of a felony, (2) possession of a firearm without a firearms identification card (as a third-degree felony), and (3) possession of an unregistered firearm (as a third-degree felony).  The People introduced no evidence of Ojeda's illegal possession of a firearm, so the trial court dismissed the last two charges with prejudice.  After conviction, the trial court dismissed the remaining murder charge without prejudice.

victim was shot multiple times on the street outside his home. The shooting was captured on a surveillance video with a partially obstructed view.

[3] The People presented the partially obstructed video showing Ojeda's purple Jeep Wrangler driving in front of the victim's home. Transcript ("Tr.") at 84, 86–97 (Jury Trial, Day 2, Mar. 26, 2024); Record on Appeal ("RA"), Ex. List at Ex. 4 (Video, Sept. 13, 2023). The scene was partially obstructed by a pillar in the middle of the camera's view. Tr. at 86 (Jury Trial, Day 2); RA, Ex. List at Ex. 4 (Video). The footage shows that the Jeep came down the street of the victim's home and then went out of view behind the pillar. Tr. at 89–91 (Jury Trial, Day 2); RA, Ex. List at Ex. 4 (Video). The video shows the victim walking toward where the Jeep was parked. Tr. at 91–92 (Jury Trial, Day 2); RA, Ex. List at Ex. 4 (Video). The footage shows the victim talking to someone inside the Jeep from the sidewalk. Tr. at 91 (Jury Trial, Day 2); RA, Ex. List at Ex. 4 (Video). Witnesses testified that at this time the victim and the driver of the Jeep were arguing.

[4] The video then shows the victim continuing to walk toward the Jeep, out of the camera's view. Tr. at 92 (Jury Trial, Day 2); RA, Ex. List at Ex. 4 (Video). Seconds later, he returned into frame, falling to his back, raising his hands up, and onto the ground. Tr. at 92–93, 99, 135 (Jury Trial, Day 2); RA, Ex. List at Ex. 4 (Video). A witness testified that he "heard and saw gunshots" and saw an arm sticking out the passenger side window of the Jeep, holding a handgun. Tr. at 176, 179 (Jury Trial, Day 2). The witness testified that he did not see anyone else on the street, aside from the Jeep's driver and the victim. Tr. at 179 (Jury Trial, Day 2). Dr. Nine, an expert in forensic pathology, testified to his opinion that the victim's cause of death was multiple gunshot wounds, caused by one bullet that went straight through his abdomen and two bullets that ricocheted off the ground before entering the victim's body.

[5] Witnesses heard "what sounded like fireworks" from inside the home, looked outside a front-facing window, and saw a purple Jeep stopped in front of the house and the victim lying on

the road. Tr. at 73 (Jury Trial, Day 1, Sept. 12, 2023). They ran outside, and one of them shot at the Jeep multiple times. The surveillance video admitted at trial shows the Jeep moved past the pillar and left. Tr. at 93–94 (Jury Trial, Day 2); RA, Ex. List at Ex. 4 (Video). Even though the Jeep is not visible, the video shows no "other vehicle or person across the street from the scene where [the victim] was shot." Tr. at 96 (Jury Trial, Day 2); RA, Ex. List at Ex. 4 (Video). A different surveillance video with sound was also shown at trial as part of the same exhibit. Tr. at 150, 153, 177 (Jury Trial, Day 2); RA, Ex. List at Ex. 4. This second surveillance video was from the victim's next-door neighbor's home. Tr. at 145, 149–50 (Jury Trial, Day 2). The second video shows the Jeep driving down the street and out of view, followed by the sounds of multiple gunshots three minutes later. Tr. at 152–53 (Jury Trial, Day 2); RA, Ex. List at Ex. 4. Officers arrived at the scene around 5:20 p.m.

[6]     Around 5:30 p.m., Ojeda telephoned Henry Simpson and told him that someone had shot Ojeda's Jeep. Simpson told Ojeda to go to the police precinct. Ojeda did. Officer Gogo met Ojeda at the Agat Precinct between 6 and 7 p.m., about two hours after the shooting occurred. Officer Gogo testified that Ojeda was limping, and the officer suspected dried blood on the back of his leg. According to Officer Gogo, Ojeda claimed he had driven down the street from his grandmother's house toward the victim's home. Ojeda said he was driving his Jeep alone.

[7]     According to Officer Gogo, Ojeda claimed that as he was driving in front of the victim's home, shots were fired at his Jeep, and he never stopped driving. Ojeda stated that bullets penetrated his Jeep, and one of the bullets hit him on the leg earlier that night. Ojeda told the officer that a bullet shattered the driver's side window and missed hitting his face. Officer Gogo testified that Ojeda "claimed that as his Jeep was getting shot at, he -- I want to say he assumed that it was a party related to [the victim] and that one of [the victim's] party members had shot [the victim]." Tr. at 125 (Jury Trial, Day 3, Sept. 14, 2023). Ojeda expressed that he saw the victim

walking out of the victim's driveway area or house onto the street towards Ojeda's Jeep. Ojeda told Officer Gogo it appeared the victim had one arm tucked behind his back and that he was probably trying to conceal a firearm.

[8]     The victim had installed a Ring surveillance camera facing the street where he was shot. The footage was accessible through an app on his cell phone. No one else had access to the footage, and the victim's wife testified that she had not gained possession of his phone. Amazon, which owns Ring, was the only other entity in possession of the footage. The People sent a preservation letter to Amazon. Amazon informed the People that they only retain the videos for 90 days and they no longer had any footage from January, the month of the incident.

[9]     Before the trial, trial counsel asked the People for discovery multiple times, including all surveillance footage. Tr. at 3–5 (Mot. Dismiss or Suppress, July 6, 2023); Record on Appeal ("RA"), tab 13 at 2 (Mot. Disc., Jan. 13, 2023); RA, tab 56 (Mot. Dismiss or Suppress for Failure Provide Disc., June 13, 2023). However, the record contains no evidence that trial counsel made any independent attempts to obtain the footage. *See* Tr. at 5, 9 (Mot. Dismiss or Suppress) (recounting trial counsel's discovery requests and demonstrating that Amazon no longer had the video).

[10]     Throughout the trial, neither party introduced evidence regarding self-defense. Trial counsel maintained that Ojeda was innocent, did not shoot the victim, and that the People did not meet their burden of proof. Neither party proposed any jury instructions on self-defense. However, instructions on self-defense were included in the draft jury instructions that were finalized at a conference held after both sides had rested their cases. Present at the conference were the judge, prosecutor, and an attorney from Public Defender Service Corporation ("PDSC") who had been involved in the case but was not Ojeda's primary counsel. The PDSC attorney appearing at the conference on Ojeda's behalf was authorized to approve the instructions in the

absence of Ojeda's primary attorney. The record does not show where, when, or how jury instructions on self-defense became included in the draft discussed at the conference.

[11]    During that conference, the court, reaching the self-defense jury instructions, asked, "5N. Self Defense? Is that supposed to be there, Self Defense, on top?" Tr. at 11 (Jury Instr. Conf., Sept. 20, 2023). Trial counsel responded that they had no objections. The court jumped back to the previous jury instruction, 5M, before asking again whether there were any objections to the first self-defense instruction. There were no objections to 5N or the next instruction, "5O, 'Self Defense,' Limited and Defined." *Id.*

[12]    Five days later, the trial reconvened for closing arguments. Ojeda's primary attorney immediately asked for the court to remove the jury instructions on self-defense because they were "inappropriate." Tr. at 2 (Jury Instrs./Closings, Sept. 25, 2023). She argued that "it wasn't [their] defense" and that self-defense was "not relevant in this case." *Id.* at 2–3. The trial court granted the motion, and the instructions on self-defense were removed. Trial counsel did not request that the jury be instructed that it could make an adverse inference against the People for failing to obtain the Ring footage. However, the jury was instructed, "If weaker or less satisfactory evidence is offered by the People, when it appears that stronger and more satisfactory evidence was within the power of the People, the evidence offered should be viewed with distrust." RA, tab 87 at 18 (Jury Instrs., Sept. 25, 2023).

[13]    The jury found Ojeda guilty of aggravated murder as a first-degree felony in violation of 9 GCA § 16.20(a)(1) (2005), with special allegation: possession or use of a deadly weapon in the commission of a felony, in violation of 9 GCA § 80.37 (2005). The trial court sentenced Ojeda to the statutorily mandated life without parole for aggravated murder and 25 years' imprisonment for the special allegation, to run consecutively. Ojeda timely appealed the judgment.

## II. JURISDICTION

[14]     This court has jurisdiction over a criminal appeal from a final judgment of the Superior Court. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-34 (2025)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

[15]     Ineffective assistance of counsel claims are mixed questions of law and fact, which this court reviews *de novo*. *People v. Soram*, 2024 Guam 10 ¶ 11 (citing *People v. Cruz*, 2023 Guam 1 ¶ 7). Typically, it is more appropriate to bring these claims through a petition for a writ of habeas corpus, as they often require an evidentiary inquiry beyond the official record. *Cruz*, 2023 Guam 1 ¶ 7. However, we may hear ineffective assistance of counsel claims on direct appeal if the record is "sufficiently complete to make a proper finding." *Id.* (quoting *People v. Moses*, 2007 Guam 5 ¶ 9).

## IV. ANALYSIS

[16]     We review Ojeda's claims on direct appeal, as the record is sufficiently complete to make a proper finding on each issue. Ojeda makes three claims based on trial counsel's: (1) motion to remove the self-defense jury instructions, (2) failure to obtain the home surveillance footage, and (3) failure to request an adverse inference jury instruction.

[17]     The Sixth Amendment and the Organic Act of Guam guarantee criminal defendants the right to the assistance of counsel for their defense. U.S. Const. amend VI; 48 U.S.C.A. § 1421b(g), (u). To prove ineffective assistance of counsel, a defendant must establish that (1) his trial counsel's performance was deficient and fell below professional norms, and (2) the deficient performance prejudiced the defendant and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Cruz*, 2023 Guam 1 ¶ 8. If a defendant fails to meet the first prong of

the *Strickland* test, we need not assess whether the second is met. *Mendiola v. Ishizaki*, 2019 Guam 26 ¶ 26.

[18]    A defendant must show that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Cruz*, 2023 Guam 1 ¶ 9 (quoting *Strickland*, 466 U.S. at 687). This court's review of counsel's trial performance is highly deferential. *People v. Meseral*, 2014 Guam 13 ¶ 46. "In engaging in such an inquiry, '[the] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (alteration in original) (quoting *Strickland*, 466 U.S. at 689). For each claim, Ojeda fails to establish that he received ineffective assistance of counsel.

## A. The Motion to Remove Self-Defense Jury Instructions Was Not Ineffective Assistance of Counsel

[19]    Ojeda claims that trial counsel's motion was in effect a withdrawal of self-defense, amounting to a "waiver of Ojeda's ability to claim a legal justification" for the charges. Appellant's Br. at 17 (June 3, 2024). Ojeda is incorrect.

[20]    Trial counsel's motion did not constitute a "withdrawal" of self-defense; rather, self-defense was never pursued. The theory of defense was that Ojeda did not shoot the victim and that the People did not meet their burden of proof. Tr. at 29 (Jury Instrs./Closings). Trial counsel's performance is not deficient for not pursuing another defense inconsistent with this theory. As we have previously stated:

> [W]e will not find fault in an attorney's performance because the attorney chose a consistent line of defense . . . . The nature of the self-defense theory and the theory pursued at trial are inherently irreconcilable. Under a theory of self-defense, the Appellant would essentially admit to the act and argue that it was done in self-defense, compared to the latter defense, relied upon at trial that the Appellant did not commit the crime.

*People v. Camacho*, 1999 Guam 27 ¶ 26. Trial counsel did not introduce evidence of self-defense at trial, ask any witness about self-defense, include self-defense in proposed jury instructions, or mention it in opening statements or closing arguments. Trial counsel moved to remove the instructions because they were "inappropriate," as self-defense was "irrelevant" to the theory of defense. Tr. at 2 (Jury Instrs./Closings).

[21]     In support of his claim that counsel was ineffective, Ojeda presents an argument based on the Supreme Court of Ohio's decision in *State v. Wilson*, 174 Ohio St. 3d 476, 2024-Ohio-776, 237 N.E.3d 179. Appellant's Br. at 17. In *Wilson*, the defendant testified that he fired his gun to scare someone who pointed a gun at him. 174 Ohio St. 3d 476, 2024-Ohio-776, 237 N.E.3d 179, at ¶¶ 5, 19, 21. The Ohio court found that the defendant was entitled to a self-defense jury instruction because his trial testimony "tended to support his claim of self-defense," satisfying the Ohio statute.[3] *Id.* ¶¶ 23–25. That court found defense counsel was ineffective for not requesting a self-defense jury instruction to which the defendant was entitled under state law. *Id.* ¶¶ 26–29.

[22]     Trial counsel's motion might have constituted deficient performance had Ojeda similarly been entitled to these instructions. However, he was not. While the court may have inadvertently included self-defense in the jury instructions, Appellant's Br. at 18, the instructions were not the result of the court finding they were appropriate or required by law. To be entitled to the instructions, Ojeda would have had to first claim he acted in self-defense, which he never did. *See People v. Gargarita*, 2015 Guam 28 ¶ 14. A defendant is "entitled to a jury instruction on self-defense if there [is] evidence on the record to support it." *People v. Root*, 2005 Guam 16 ¶ 28

---

[3] The precise issue was whether a defendant is "entitled to a self-defense instruction for firing a warning shot at an armed aggressor, or must they shoot to injure or kill in order to receive the instruction at trial." *State v. Wilson*, 174 Ohio St. 3d 476, 2024-Ohio-776, 237 N.E.3d 179, at ¶ 10. Under the Ohio statute, "[i]f, at the trial . . . there is evidence presented that tends to support that the accused person used the force in self-defense, . . . the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense . . . ." *Id.* ¶ 15 (citing Ohio Rev. Code Ann. § 2901.05(B)(1) (West 2025)).

(alteration in original) (quoting *United States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir. 1984) (per curiam)).  In other words, an instruction is appropriate "if there is evidence upon which the jury could rationally sustain the defense." *Id.* (citation omitted).

[23]   There was no evidence on the record to support self-defense.  Thus, Ojeda was not entitled to the jury instruction.  Officer Gogo's testimony included claims that another person shot Ojeda but not that Ojeda ever claimed to have fired back in self-defense.  Tr. at 109–25 (Jury Trial, Day 3).  According to the officer, Ojeda said that he saw the victim "walking out from his driveway area or from the house onto the street towards his Jeep.  It appeared he had one arm tucked behind his back.  According to Mr. Ojeda, it appeared that [the victim] was probably trying to conceal a firearm." *Id.* at 118.  The officer continued, "[A]ccording to him, he didn't stop.  All he remembers was . . . shots being fired towards his Jeep and based on the report . . . he did tell me there was a round or a bullet that went by his face and shattered his driver's side window." *Id.*

[24]   Another witness testified that Ojeda told him over the phone that "they shot my Jeep."  Tr. at 11 (Jury Trial, Day 4, Sept. 15, 2023).  That witness said nothing about Ojeda firing a gun at all—let alone in self-defense. *Id.* at 8–14.  There was no trial testimony or other evidence that Ojeda shot the victim in self-defense or that could support the inference that he shot in self-defense.  Trial counsel never conceded that Ojeda shot at the victim, let alone shot in self-defense.  For instance, trial counsel did not challenge testimony from police that Ojeda told them he was visiting his grandmother, driving down the street, did not stop, and was shot at.  Tr. at 113–14, 117 (Jury Trial, Day 3).  Had trial counsel not moved to remove these jury instructions, they would have been the first and only reference to self-defense in the jury's presence.  In that case, Ojeda may be challenging the instructions on appeal. *See, e.g.*, *State v. Trussell*, 213 P.3d 1052, 1057 (Kan. 2009) ("[T]rial courts should not interfere with a defendant's chosen defense theory by giving an instruction which neither party requested and which may undermine defendant's chosen theory.").

[25] Ojeda alleges that trial counsel's motion "fell below an objective standard of reasonableness because there was no other defense available, let alone a justification, given the evidence presented at trial." Appellant's Br. at 17. However, on appeal, Ojeda does not challenge trial counsel's strategic decision not to pursue self-defense as part of the defense's overall trial strategy. Ojeda does not claim trial counsel could have presented evidence of self-defense and was deficient for failing to do so. Nor does he claim trial counsel was deficient for adopting a theory of innocence rather than a defense that conceded some level of guilt, such as imperfect self-defense. Instead, he argues only that the self-defense instructions themselves could have made a difference. *See* Appellant's Br. at 15–19; Appellant's Reply Br. at 1–2 (July 31, 2024). We reject Ojeda's argument. On the evidence presented, no rational jury could have found Ojeda acted in self-defense. Accordingly, Ojeda was not entitled to a self-defense jury instruction. *See Root*, 2005 Guam 16 ¶ 29 (noting that defendant was not entitled to a self-defense instruction when "[t]here was no evidence from which the jury could find, or even infer, that [defendant] believed that the force he used on the victim was necessary to protect himself"). It was not deficient for trial counsel to ask the trial court to remove an instruction that neither party requested, and which undermined the defense's theory of innocence. Ojeda fails to demonstrate that trial counsel performed deficiently and below professional norms.

**B. Failure to Obtain or Preserve the Ring Footage**

[26] Trial counsel's failure to reasonably investigate the Ring footage constitutes deficient performance. However, Ojeda fails to show this prejudiced him.

> **1. Failing to take reasonable steps to preserve or obtain key evidence is deficient performance and falls below professional norms**

[27] We agree with Ojeda that it does not appear from the record that trial counsel took any independent actions to preserve or obtain the Ring footage. Appellant's Br. at 20. Ojeda argues,

"The decision not to investigate this critical piece of evidence was not reasonable professional judgment." *Id.* at 20–21. In evaluating defense counsel's duty to investigate, the U.S. Supreme Court opined:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690–91. Applying this heavy deference, we must determine whether trial counsel's lack of investigation was reasonable. *See id.* We consider whether counsel made a reasonable investigation into the Ring footage or made a reasonable decision that made further investigations unnecessary. *See id.*

[28]    Trial counsel was appointed two days after the shooting. RA, tab 5 at 1 (Notice Ct. Appointed Counsel, Jan. 6, 2023). One week later, they filed their Motion for Discovery, requesting "any . . . recordings" in the possession of "an alleged victim, a victim's family, or any other potential witness, which have not yet been provided to the defense." RA, tab 13 at 2 (Mot. Disc.). It does not appear that the trial court ruled on this motion.[4] Six months later, trial counsel filed their Motion to Dismiss or Suppress for Failure to Provide Discovery. RA, tab 56 (Mot. Dismiss or Suppress for Failure Provide Disc.). This motion asked the court to dismiss the charges against Ojeda or suppress the testimony of any government witness regarding the firearms seized or the bullet casings found. *Id.* at 3. The motion did not address the missing surveillance video.

---

[4] The People filed a Motion for Discovery a week later. RA, tab 21 (People's Mot. Disc., Jan. 20, 2023). The trial court granted the People's motion. RA, tab 33 at 1 (Order Disc., Feb. 6, 2023). There is no similar order on Ojeda's motion in the record.

*Id.* at 1-3.  Although not explicitly addressed in the motion, trial counsel brought up the Ring footage at the hearing on the motion.  Tr. at 3, 5 (Mot. Dismiss or Suppress).

[29]   At the hearing, the People responded that they had sent over everything in their possession. *Id.* at 9.  They told the court they had contacted Amazon, which informed them that the company stored Ring videos in the cloud for only 90 days.  *Id.*  Amazon no longer had any videos from January, when the shooting occurred.  *Id.*  The court denied Ojeda's motion and did not address the surveillance video in its decision.  RA, tab 69 (Dec. & Order Den. Def.'s Mot. Dismiss or Suppress for Failure Provide Disc., Aug. 25, 2023).  Trial counsel never obtained the Ring footage. Tr. at 40 (Jury Instrs./Closings) (stating in closing argument that the video no longer exists); Tr. at 5, 9 (Mot. Dismiss or Suppress) (recounting trial counsel's discovery requests to the People including the Ring footage and demonstrating that Amazon no longer had the video).

[30]   Trial counsel requested discovery or asked the court to remind the People to send them continuing discovery at least six different times.  Tr. at 3–5 (Mot. Dismiss or Suppress).  The hearings where this occurred were the arraignment on January 24, two status hearings on February 3 and March 10, a competency hearing on March 24, and pretrial conferences on June 6 and 12. *Id.*  It appears that several of these hearings occurred within the timeframe when Amazon retains Ring footage.  *See id.* at 9 (suggesting People's preservation request was made more than 90 days after shooting).  While trial counsel emphasized the People's failure to obtain or produce the footage, the record suggests that they took no steps to obtain the footage themselves.  *See id.* at 3– 9; Tr. at 39–40 (Jury Instrs./Closings).  This would mean defense counsel let weeks lapse between hearings—at one time over five weeks and on another over ten weeks—without taking reasonable steps to investigate.  Merely requesting the People investigate and obtain vital evidence that had a strong likelihood of capturing the entire incident—without making an independent effort to obtain the footage—was unreasonable.

**[31]**    The camera was at the front of the house, facing the driveway and street where the incident occurred.  RA, Ex. List at Ex. 1J (Photo, Sept. 12, 2023).  As Ojeda argues, the Ring camera would have likely captured "most if not all of the exchange between Ojeda and [the victim], the shooting, and what happened after the shooting."  Appellant's Br. at 21.  From the date of their appointment, trial counsel had over 80 days when they could have obtained the footage—independent of the People's efforts—before its deletion.  Instead, it seems trial counsel took no steps beyond asking the prosecution to get it for them.  Trial counsel had "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *See Strickland*, 466 U.S. at 690–91.  Trial counsel failed to fulfill this duty.  As this footage would have likely captured the entire incident, taking no proactive steps to obtain or preserve it was unreasonable.  Trial counsel's performance was deficient, and this lack of investigation fell below professional norms.

### 2.  Ojeda fails to show prejudice

**[32]**    Ojeda claims he was prejudiced by trial counsel's failure to obtain the Ring footage.  Appellant's Br. at 21.  The defendant must "affirmatively prove prejudice" to support his claim.  *Cruz*, 2023 Guam 1 ¶ 10 (quoting *Strickland*, 466 U.S. at 693).  To establish prejudice by counsel's deficient performance, the defendant "must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* (emphasis added) (quoting *Strickland*, 466 U.S. at 694); *People v. Borja*, 2017 Guam 20 ¶ 33 ("The standard is whether there is a reasonable probability that, but for the errors, the jury would have had a reasonable doubt as to defendant's guilt.").  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Cruz*, 2023 Guam 1 ¶ 10 (quoting *Strickland*, 466 U.S. at 694).  "[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case."  *Eggleston v. United States*, 798 F.2d 374, 376

(9th Cir. 1986). "[W]ith respect to defective investigations, the test for prejudice is whether the noninvestigated evidence was powerful enough to establish a probability that a reasonable attorney would decide to present it and a probability that such presentation might undermine the jury verdict." *Mickey v. Ayers*, 606 F.3d 1223, 1236–37 (9th Cir. 2010) (citing *Wiggins v. Smith*, 539 U.S. 510, 535 (2003)). In light of the strength of the government's case, Ojeda fails to show a probability that the Ring footage might have undermined the jury verdict. *See Eggleston*, 798 F.2d at 376; *Mickey*, 606 F.3d at 1236–37. As Ojeda seems to recognize, the government had a strong case against him:

> There were multiple witnesses who testified at trial that Ojeda was present at the time of the shooting. This included statements Ojeda himself made to Officer Gogo. There was video footage available showing Ojeda's Jeep driving in front of [the victim's] home. There was video footage of an exchange between someone in the Jeep and [the victim]. There was video footage of [the victim] falling back. There were bullet casings found in the back of Ojeda's Jeep that matched the caliber of the bullets recovered during [the victim's] autopsy.

Appellant's Br. at 18. Considering the evidence admitted at trial, Ojeda has not demonstrated a reasonable probability that the trial's outcome would have been different had counsel obtained the "noninvestigated evidence." *See Mickey*, 606 F.3d at 1237. Thus, he has not affirmatively shown that trial counsel's lack of investigation prejudiced him, and his claim of ineffective assistance of counsel fails. *See People v. Towai*, 2024 Guam 9 ¶¶ 46–47 (holding that defendant did not demonstrate prejudice when counsel failed to suppress evidence that was cumulative of other evidence properly entered at trial). Trial counsel's performance—though deficient—does not amount to ineffective assistance.

## C. Failing to Request an Adverse Inference Instruction was not Ineffective Assistance of Counsel

[33] Ojeda argues that trial counsel "should have requested an instruction that the jury could draw an adverse inference against the government specific to its failure to preserve and provide

the footage as a remedy." Appellant's Br. at 23. Ojeda contends that had the adverse inference instruction been given, "the jury would have specifically been informed that it could assume the surveillance footage would have been unfavorable to the government based on its failure to preserve that evidence." *Id.* at 24.

[34]     "The failure to request an appropriate jury instruction may be ineffective assistance of counsel where there is no strategic justification for doing so." *People v. Reyes*, 1998 Guam 32 ¶ 11. On a claim that counsel was ineffective in failing to request a jury instruction, we do not view the instructions in isolation but consider them as a whole. *See People v. Morales*, 2022 Guam 1 ¶ 31 (first quoting *People v. Jones*, 2006 Guam 13 ¶ 28; and then quoting *People v. Cox*, 2018 Guam 16 ¶ 16) (reviewing jury instructions as a whole in plain error analysis).

[35]     We agree with Ojeda that the government had a duty to make reasonable efforts to preserve and obtain the surveillance footage and should not be able to gain an advantage through its own negligence. *See* Appellant's Br. at 21–23. Our review of the record shows that despite trial counsel's failure to request an adverse inference instruction, the jury was given a "weaker or less satisfactory evidence" instruction.[5] The jury was instructed: "If weaker or less satisfactory evidence is offered by the People, when it appears that stronger and more satisfactory evidence was within the power of the People, the evidence offered should be viewed with distrust." RA, tab 87 at 18 (Jury Instrs.).

[36]     Significantly, in this case, trial counsel argued that the missing Ring footage was within the power of the People:

> We live in the age of social media. . . . [E]verything is out there right away. . . And the Government couldn't retrieve that video? They have subpoena powers. Okay,

---

[5] Despite this court's "strong disapproval" of a "weaker and less satisfactory evidence" instruction, we have acknowledged that such an instruction may be permissible in exceptional circumstances, including "where the government spoiled or destroyed evidence" or "where a modified version applying only to the government is given." *People v. Cruz*, 2020 Guam 11 ¶¶ 13–14.

it's understandable one day after, you know, work on it, a week after, a month after -- but the Government can subpoena that.

. . . . How easy is that? . . . [T]hat surveillance camera video is the most important witness in this whole case and it's not -- it doesn't exist. . . . You have to weigh that fact with what came out at trial.

Tr. at 40 (Jury Instrs./Closings); *see also* Tr. at 158–59, 162, 166–68, 217 (Jury Trial, Day 1). The jury could have found that the partially obstructed footage offered by the People was "weaker or less satisfactory" than the Ring footage and that the jury should view the video offered with distrust. In the absence of an adverse inference instruction,[6] trial counsel's arguments to the jury combined with the "weaker or less satisfactory evidence" instruction falls within the "wide range of reasonable professional assistance." *Cf. Weighall v. Middle*, 215 F.3d 1058, 1063 (9th Cir. 2000) (holding counsel's failure to request additional self-defense instruction not unreasonable because evidence, other instruction, and counsel's closing argument put issue squarely before jury); *United States v. Haddock*, 12 F.3d 950, 959 (10th Cir. 1993) ("We do not think that there is a reasonable probability that the jury would have decided differently had the instruction been given, because the defense and evidence were clearly before them even without the instruction."). Further, even if trial counsel's performance was deficient, Ojeda fails to demonstrate prejudice. Ojeda does not demonstrate any likelihood that the jury would have made an adverse inference greater than any distrust with which they already viewed the available video evidence. Thus, he fails to demonstrate he received ineffective assistance of counsel.

---

[6] We express no opinion on whether it was proper to give this instruction. Ojeda concedes that the Ring footage was not in the People's possession, its destruction would not violate his right to due process, and that the record does not support a finding that the People acted in bad faith. *See* Appellant's Br. at 21-22 (June 3, 2024) (citing *People v. Kitano*, 2011 Guam 11 ¶ 31). Ojeda asks this court to "join the jurisdictions who have recognized that defendants are entitled to a missing evidence instruction when the government destroys or fails to preserve evidence *even where bad faith is not shown*." *Id.* at 22 (emphasis added). Because we conclude the jury was given an adequate substitution for an adverse inference instruction in this case, we leave for a future case the question of whether such an instruction was required.

### V. CONCLUSION

**[37]** The record is sufficiently complete to properly determine each of Ojeda's three claims of ineffective assistance of counsel on direct appeal. In each instance, Ojeda does not show that he was denied his right to counsel. Ojeda fails to show that it was deficient performance for trial counsel to move for the removal of the self-defense jury instructions, which neither party requested, and which were unsupported by evidence. While trial counsel's failure to attempt to independently obtain the Ring footage constituted deficient performance, Ojeda fails to demonstrate how this failure prejudiced him. Lastly, Ojeda fails to establish that trial counsel was ineffective for not requesting an adverse inference jury instruction. In light of the "weaker or less satisfactory evidence" instruction and the defense's closing argument, trial counsel was not deficient for failing to request an additional adverse inference instruction regarding the absence of the Ring footage. We **AFFIRM**.


/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice


/s/
ROBERT J. TORRES
Chief Justice